UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL NICHOLE CORWIN,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:20-cv-00394-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 24, 28)** |

## I.      Introduction

Plaintiff Crystal Nichole Corwin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 24, 28, 29.  After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.  Plaintiff's appeal is therefore granted.

## II.      Factual and Procedural Background[2]

On October 28, 2016 Plaintiff applied for benefits alleging disability as of April 2, 2016.  AR 241–54.  The Commissioner denied the applications initially on April 14, 2017 and on reconsideration on July 27, 2017.  AR 171, 182.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on March 5, 2019.  AR 35–62.  On April 17, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 12–34.  The Appeals Council denied

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 10.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed.  Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

review on January 22, 2020.  AR 1–6.  On March 17, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

2

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 2, 2016.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: spine disorder (syrinx) and anxiety.  AR 18.  The ALJ also determined at step two that Plaintiff had the following non-severe impairments: small fiber neuropathy, medial meniscus tear with subchondral cyst, lateral femoral condyle and patellar tendon friction syndrome, Hashimoto's disease, hypothyroidism, and depression.  AR 18–19.  The ALJ further determined at step two that Plaintiff's one time diagnosis of mild unspecified neurocognitive disorder was not a medically determinable impairment.  AR 19.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19–21.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations on sitting, standing, walking, limitations on postural activities, and a

limitation to simple, routine tasks.  AR 21–25.  At step four the ALJ concluded that, considering her RFC, Plaintiff could perform her past relevant work as a Cashier II.  AR 25–26.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of April 2, 2016.  AR 26.

### V.   Issues Presented

Plaintiff asserts three claims of error: 1) that the ALJ failed to incorporate the opinions of Drs. Nicoloff and Hawkins, which opined that Plaintiff could only perform one to two step work tasks; 2) that the ALJ erred in failing to develop the record and obtain an assessment of Plaintiff's physical limitations from a treating or examining source; and 3) that the ALJ failed to properly consider the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.

#### A.   The Opinions of Drs. Nicoloff and Hawkins

##### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.

*Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

## 2.     <u>Analysis</u>

Disability Determination Service (DDS) doctors Nicoloff and Hawkins reviewed Plaintiff's mental health treatment record at the initial and reconsideration levels, respectively, and concluded

5

(in relevant part) that Plaintiff is capable of understanding, remembering and carrying out simple one to two step tasks.  AR 107, 123.  They also opined that Plaintiff was capable of performing simple and routine tasks.  AR 106, 119, 123.  In formulating the RFC, the ALJ limited Plaintiff to understanding, remembering and carrying out simple and routine tasks with no mention of simple one to two step tasks.  AR 24.  Given that the ALJ accorded great weight to the opinions of Drs. Nicoloff and Hawkins, Plaintiff contends the ALJ erred in not incorporating the one to two step task limitation into the RFC.

Plaintiff correctly observes that it is well established that the ALJ is not permitted to simply ignore the evidence that contradicts the RFC or reject it without explanation.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) [*17] ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.")

Having accorded great weight to an opinion, the ALJ must either adopt the limitations therein or explain why they were rejected.  *Berenisia Madrigal v. Saul*, 1:18-CV-01129-SKO, 2020 WL 58289, at *5 (E.D. Cal. Jan. 6, 2020) ("While the ALJ need not accept the full extent of Dr. Bonilla's opinion, the ALJ may not reject it, or significant parts of it, without giving specific and legitimate reasons for doing so.) (citing *Bain v. Astrue*, 319 F. App'x. 543, 545–46 (9th Cir. 2009).

Here, however, the ALJ did not reject the opinions of Drs. Nicoloff and Hawkins.  Plaintiff incorrectly contends that the doctors opined that Plaintiff could perform *only* simple, one to two step tasks.  Br. at 8, Doc. 24.  Both Drs. Nicoloff and Hawkins also opined that she could perform simple and routine tasks.  Consistent with those opinions the ALJ limited Plaintiff to simple and routine tasks.  AR 106, 143.

Although it is not necessarily apparent that "routine" tasks and "one to two step" tasks are synonymous, there is no reason to believe one is more or less restrictive than the other.  Indeed, Plaintiff identifies no precedent suggesting there is any inconsistency between an opinion that

Plaintiff can perform simple one to two step tasks and simple, routine tasks.  Even assuming the former is more restrictive than the latter, Defendant cites persuasive authority holding that an ALJ should read the two statements cumulatively when formulating the RFC, given that the RFC is the most an individual can do, not the least.  *Nyberg v. Comm'r of Soc. Sec.*, No. 2:20-CV-0338-DMC, 2021 WL 1295378, at *6 (E.D. Cal. Apr. 7, 2021). ("It is clear that Dr. Colsky opined that the *most* Plaintiff can do is simple repetitive work, which is precisely the residual functional capacity described by the ALJ. Because the ALJ accounted for Dr. Colsky's opinion as to the most Plaintiff can do, the Court finds no error in the ALJ's analysis.") (emphasis added).  In other words, if Plaintiff can perform not only simple one to two step tasks but also simple and routine tasks, it is appropriate for the RFC to reflect only the latter.

Plaintiff relies on *Steven* in which the court found error "caused by the ALJ's failure to explain why he was rejecting [the physician]'s stated shorter-simpler 1-2 step instruction limitation *in favor* of a limitation to 'simple, routine' tasks."  Reply at 2 (citing *Steven J. P. v. Saul,* CV 19-4330-PLA, 2020 WL 208808, at *5 (C.D. Cal. Jan. 14, 2020).  *Steven* is not applicable here as the doctors' opinions reflected both statements and the ALJ incorporated the least restrictive of the two consistent with the notion that the RFC is the most one can do despite one's limitations, not the least one can do.

Moving past the ALJ's incorporation of the opinion evidence into the RFC, the impact of that RFC on the available job base must also be considered.  Jobs with a DOT reasoning level of 1 require an individual to "carry out simple one- or two-step instructions."[3]  Because Drs. Nicoloff and Hawkins opined that Plaintiff could carry out simple one-two step instructions, Plaintiff contends that their opinions (accepted as true) establish that she could not perform jobs with a

---

[3] U.S. Dept. of Labor, Dictionary of Occupational Titles, Revised 4th Edition, 1991, *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC

reasoning level greater than R1. The argument is not well taken. As explained above, the doctors also opined that she could perform simple routine tasks, and it is reasonably well established that a limitation to simple and routine tasks is consistent with the demands of R2 jobs. *See, e.g. Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D. Cal. 2005) (finding no conflict between limitation to simple/routine tasks and the VE's identified jobs with a reasoning level of R2); *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019) (same).

Notably, however, Plaintiff's past relevant work as a Cashier II does in fact have a reasoning level of *R3*. DOT 211.462-010. Plaintiff briefly mentioned this in her opening brief which Defendant did not address in response. The parties focused primarily on whether the ALJ, having according great weight to the opinions of Drs. Nicoloff and Hawkins, properly incorporated the mental limitations therein when formulating Plaintiff's RFC. As explained above, the ALJ did so. The dispositive question is whether, having properly incorporated the limitation to simple and routine tasks into the RFC, the ALJ reasonably relied on the VE's testimony that an individual limited to simple and routine tasks could perform Plaintiff's past work as a Cashier II. The ALJ did not reasonably rely on the VE's testimony.

Pursuant to SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Here, there was an apparent conflict between the limitation to simple, routine tasks and the

8

demands of Plaintiff's past relevant work as a Cashier II which has a reasoning level of R3.[4] *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning" and noting "it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form' as such instructions can be abstract."); *Kinney v. Berryhill*, No. CV 17-03758 AFM, 2018 WL 1145694, at *3 (C.D. Cal. Jan. 25, 2018) (finding conflict with limitation to simple/routine tasks and jobs with a reasoning level of R3, but no conflict with R2 jobs, and finding harmless error where the VE identified one R3 job and two R2 jobs that the claimant could perform).

Because the ALJ neither identified the conflict, nor attempted to elicit a reasonable response from the VE regarding the same, the ALJ erred.  In contrast to *Kinney*, the error is harmful because the ALJ did not proceed to step five and the VE did not identify any jobs existing in significant numbers in the national economy at the R1 or R2 reasoning levels that someone with Plaintiff's RFC could perform.

### B.    Failure to Develop the Record

#### 1.    Applicable Law

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011);

---

[4] Jobs with a reasoning level of R3 require an individual to "carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations."
U.S. Dept. of Labor, Dictionary of Occupational Titles, Revised 4th Edition, 1991, *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC

*Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

## 2.    <u>Analysis</u>

Plaintiff argues that the ALJ was required to develop the record and obtain an assessment of Plaintiff's physical limitations from a treating or examining source.  Plaintiff contends the RFC was unsupported because it was based upon the opinions of the non-examining Disability Determination Service (DDS) physicians who did not review the complete medical file, and that the ALJ therefore relied on her own lay interpretation of the subsequent medical data to estimate functioning.  Accordingly, Plaintiff contends the ALJ erred in not obtaining a consultative physical examination.  Br. at 9–11.

Plaintiff's argument is belied by the fact that there is always a gap in time between the non-examining DDS physician's review at the initial/reconsideration levels and the ALJ's subsequent hearing decision, and claimants routinely continue pursuing care in the interim thereby generating new medical records.  If the mere passage of time and presence of additional medical evidence in the record established ambiguity, a consultative examination would be required in every case.  Yet the regulations provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case.  *See* 20 C.F.R. § 404.1519; *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

Although Plaintiff cites dicta from unpublished cases suggesting that an ALJ may not formulate an RFC without referencing a treating or examining opinion, such cases do not purport to establish (nor would they be controlling if they did) a rule of general applicability that an ALJ must obtain an examining opinion in every case before rendering an RFC determination.  Br. at 10

(citing *Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) (collecting cases).   The ALJ must indeed formulate an RFC in every case, yet there is no requirement that the ALJ obtain an examining opinion in every case.

Plaintiff contends that ambiguity was present here necessitating an in-person consultative examination because the records reviewed by the non-examining DDS physicians Tayloe and Rudito was missing two years' worth of records spanning 250 pages which documented continued monthly treatment for worsening lower backpain.   Br. at 10 (citing AR 1375–1615).   Yet Plaintiff's opening brief only cites three specific pages therein documenting one instance of positive straight leg raise and Spurling's test (cervical provocation test) during physical examinations at LAGS Medical Centers on September 11, 2018 and November 13, 2018, respectively.   AR 1449–50, 1464.

The fact that Plaintiff continued treatment for lower back pain does not establish worsening of the condition.   As for the specific content of the records postdating the DDS physicians' review, the positive Spurling test (cervical provocation) does not establish a worsening of her low back condition, nor does it establish a worsening of her spinal condition more generally as the same records also reflect an examination noting a negative Spurling test.   *See* AR 1449–50 (positive Spurling's); 1471 (negative Spurling's).   Nor did the positive straight leg raise test for lumbar radiculopathy on September 11, 2018 create ambiguity as to Plaintiff's low back condition or undermine the ALJ's reliance on the non-examining DDS physicians' opinions.   The records they reviewed already included a pre-existing assessment for lumbar radiculopathy on August 24, 2016 and a pre-existing instance of positive straight leg raise test on June 27, 2016.   AR 101, 940, 949.   Thus, the later dated examinations underscored by Plaintiff did not present novel information in those respects.

In reply, Plaintiff also underscores the ALJ's opinion at page 24 in which she noted examinations demonstrating lower extremity weakness and a limping gate.   AR 24 (citing Ex. 11F

11

at 3; 26F and 31F).  Plaintiff contends these were "later" examinations "likely warranting further limitation" than what DDS doctors Tayloe and Rudito identified.  That is not correct.  The examination documenting proximal lower extremity weakness was in fact dated July 20, 2016 (AR 780), predating Dr. Tayloe's March 10, 2017 review at the initial level which reflects consideration of that examination.  AR 101–02.  The first examination the ALJ cited documenting limping gate was dated May 11, 2017 (AR 1332) which predated Dr. Rudito's July 17, 2017 review at the reconsideration level which also reflects consideration of that examination.  AR 137, 154, 158.  Thus, one or both DDS physicians had already reviewed both examinations.  The ALJ did not independently interpret the same.

The ALJ also cited additional examinations documenting limping gate which post-dated the DDS physician's review and which Plaintiff relies on to support the notion that her condition worsened following that review.  AR 1458, 1464, 1476, 1484, 1494, 1497, 1505.  Even assuming the ALJ is unqualified to interpret an examination finding of limping gate and translate the same into functional terms without the aid of a physician (a debatable proposition), that examination finding still does not establish the worsening of a condition as compared to the records reviewed by DDS physicians.  As noted above, limping gate was also noted in the examination on May 11, 2017 which Dr. Rudito did review at the reconsideration level.  AR 154, 158.

Moreover, a review of the record reflects at least six other instances of limping gate noted during examinations on August 8, 2016, September 12, 2016, November 2, 2016, December 7, 2016, January 6, 2017, and March 13, 2017, all of which were reviewed by the DDS physicians.  (1002, 1009 1015, 1122, 1351, 1343).  Additional instances of limping gate post-dating that review do not create any ambiguity regarding Plaintiff's physical condition or establish worsening of that condition.

Plaintiff also reported worsening of her chronic neuropathic pain following a car accident

on April 7, 2017.  AR 1240.  At the reconsideration level Dr. Rudito did review the physical examination in the immediate aftermath of the accident as well as an additional examination the following month.  AR 154.

In sum, this case is far afield from the typical cases addressing this issue in which the medical records post-dating the DDS physicians' review often reflect new injuries or conditions, worsening of existing conditions, and/or the ALJ independently interpreting raw medical data such as imaging or complex laboratory findings.  *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."); *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining state agency physician, an opinion which pre-dated "plaintiff's treating records regarding the progression of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.").

Here, by contrast, the records Plaintiff identifies were orthopedic physical examinations documenting familiar findings on gate, range of motion, reflexes, sensation and muscle strength, among others.  Although the precedent on this issue has not articulated clean lines on which types of records are susceptible to an ALJ's lay understanding and which are not, the answer to that question is not dispositive here.  Even assuming an ALJ is not qualified to independently review the examination records cited above and translate the same into functional terms, those

examinations did not suggest the development of a new condition, or a worsening of an existing condition, as compared to the records reviewed by the DDS physicians.

To the contrary, the records Plaintiff underscores which purportedly established worsening of her physical condition were either already reviewed by the DDS physicians or contained findings duplicative of records already reviewed by the DDS physicians, as explained above. Accordingly, there is no basis to conclude that the records post-dating the DDS physicians' review created any ambiguity regarding Plaintiff's physical limitations, or that the ALJ erred in failing to further develop the record with an in-person assessment of Plaintiff's physical limitations by a consultative examiner.

### C.    Plaintiff's Subjective Symptomology

#### 1.    Applicable Law

The ALJ is responsible for determining credibility,[5] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the

---

[5] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

## 2.   Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering.  AR 22.  Thus, the ALJ was required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ summarized Plaintiff's testimony including her: 1) inability to lift more than 10 pounds without her left leg giving out; 2) inability to sit or stand more than one hour in an eight-hour day due to burning in her feet and pain in her back; 3) continued pain notwithstanding chiropractic treatment, physical therapy, spinal injections, and pain medication; 4) being easily distracted; and 5) requiring an assistive device for ambulation.  AR 22.

The ALJ rejected the same as inconsistent with medical evidence, including, among other reasons: 1) repeated negative EMG studies notwithstanding complaints of pain, numbness and

tingling in her extremities; 2) isolated instances of proximal weakness of the left lower extremity reasonably attributable to small fiber neuropathy but otherwise 5/5 motor strength in bilateral upper and lower extremities with grossly intact sensory and reflect functioning; 3) examinations demonstrating full ambulation with normal gate, normal muscle tone, and no atrophy; and,  4) reports of her spinal cord syrinx being stable with no need for intervention.  AR 23.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ also noted evidence that Plaintiff is independent with personal care, gets her kids up and ready for school, prepares full meals for the family taking two to three hours, cleans when she can, drives, grocery shops, manages finances, pays bills, socializes and follows written instructions.  AR 25.  Although these activities do not necessarily establish an exceptionally high level of functionality, nor establish Plaintiff's ability to sustain gainful employment, they did reasonably establish that her symptoms were not as disabling as alleged.  *See Valentine v. Commissioner Social Sec. Admin*., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . .  evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

## VI.    Remand for Further Proceedings

Here, because the ALJ articulated an RFC supported by substantial evidence, there was no obligation to further develop the record with a consultative examination. Additionally, the ALJ identified clear and convincing reasons for rejecting Plaintiff's subjective testimony.  The RFC set

forth by the ALJ appropriately accounted for the mental limitations identified by Drs. Nicoloff and Hawkins who opined Plaintiff could perform simple and routine tasks.  The ALJ erred, however, in relying on the VE's testimony that Plaintiff could perform her past relevant work as a Cashier II.  The VE's testimony conflicted with the DOT insofar as Cashier II has a reasoning level of R3, the mental demands of which are inconsistent with a limitation to simple and routine tasks.  *See Zavalin*, 778 F.3d at 847.

Remand is therefore appropriate for the ALJ to either elicit a reasonable explanation from the VE regarding such conflict, or to question the VE regarding the availability of other jobs existing in significant numbers in the national economy below the R3 reasoning level that someone with Plaintiff's RFC could perform.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

**VII.   Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Crystal Nichole Corwin and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 4, 2021**             **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE

17